IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

YAMINI NOTARIA,                    )
                                   )
            Plaintiff,             )
                                   )
    v.                             )    No. 09 C 4475
                                   )
OSCO DRUG, INC., et al.,           )
                                   )
            Defendants.            )

MEMORANDUM OPINION AND ORDER

Related defendants Osco Drug, Inc., American Drug Stores, Inc. and American Drug Stores, LLC have filed a Fed. R. Civ. P. ("Rule") 56 motion for summary judgment in this employment discrimination action brought against them by ex-employee Yamini Notaria ("Notaria"). Notaria has just filed her responsive materials in accordance with this District Court's LR 56.1, and her submission plainly calls for the swift rejection of the Rule 56 motion. This Court so orders.

It is of course universally established that for Rule 56 purposes a court must consider the evidentiary record in the light most favorable to the nonmovant and draw all reasonable inferences in her favor (this Court most frequently cites, among the host of cases so holding, <u>Lesch v. Crown Cork & Seal Co.</u>, 282 F.3d 467, 471 (7th Cir. 2002)). What that means, of course, is that the court makes no credibility determinations at the summary judgment stage, leaving that instead to the factfinding jury at the trial that must ensue when a summary judgment motion fails.

In this instance Notaria's version, which must be credited at this point, expressly identifies Notaria's supervisor Mir Khan ("Khan") as the villain in the piece--as the person whose virulent anti-Indian bias (Notaria is of Indian origin) and retaliatory motive engineered Notaria's discharge. Notaria's Mem. 1 invokes the "cat's paw theory" in support of her ascribing Khan's motives and actions to the imposition of liability on the corporate defendants--but in so doing Notaria's counsel have taken on somewhat more of a burden than they need to carry.

As chance would have it, this Court had occasion only last week to write on that precise subject in <u>Lockard v. Fidelity Info. Servs., Inc.</u>, No. 08 C 3767, 2010 WL 2721860 (N.D. Ill. July 8).[1] Except for the difference in the cast of characters (plaintiff W. Lisa Lockard in that case corresponds to Notaria here, with fellow employee Lopez there corresponding to Khan here and with decisionmaker Rhea in that case corresponding to the decisionmaker here), this portion of the <u>Lockard</u> opinion (<u>id</u>. at *4-*5, with footnotes omitted) could equally well have been written for this case:

> But although there is evidence of discriminatory animus only on the part of Lopez, there is no question that at a minimum she significantly influenced the decision to terminate, and there is equally no question that a jury could reasonably determine that her animus affected the

---

[1] Although the <u>Lockard</u> opinion has been sent in for publication, its recency requires use of the WL citation rather than the to-be-issued F.Supp.2d reference.

outcome (see Long v. Teachers' Retirement Sys., 585 F.3d 344, 351 (7th Cir. 2009) and, even more recently, Kodish v. Oakbrook Terrace Fire Prot. Dist., 604 F.3d 490, 508 (7th Cir. 2010)). Even though Lockard acknowledges that Rhea came to his own decision as to termination, on the current record a jury could rationally view that decision as unduly triggered by Lopez's input rather than as an independent review (see id. at 352).

Because of the critical importance of the legal standard to be employed in evaluating, for summary judgment purposes, the facts already set out and to be set out hereafter, this opinion will take the admittedly unusual step of addressing those standards at this point rather than later. On that score some decisions by our Court of Appeals have imposed an unduly demanding test in situations in which an impermissibly biased intermediate supervisor has provided a tainted input to an ultimate decisionmaker who was innocent of any discriminatory intent--a "cat's paw" approach that essentially requires that the decisionmaker be deprived of free will, as though the bigoted supervisor has figuratively guided the decisionmaker's hand in signing the termination papers. But other cases have applied what this Court has always considered a more realistic approach, under which those cases "have imputed the retaliatory intent of a subordinate to an employer where the subordinate exerts significant influence over the employment decision" (Long, 585 F.3d at 351; and see the extended discussion there, id. at 351-52)--a sort of "poisoning the decisional well" concept.

Most recently the tea leaves appear to support a reading that conforms to what this Court has viewed as more realistic: On April 19, 2010 the Supreme Court granted certiorari (129 S. Ct. 2089) in Staub v. Proctor Hosp., 560 F.3d 687 (7th Cir. 2010), with the Solicitor General having filed an amicus brief urging that our Court of Appeals' more stringent of the two approaches (one requiring a "singular" rather than a "significant" influence to be exercised by the biased supervisor) was wrong and that an employer should be held liable "when a biased subordinate influences but does not make the adverse employment decision" (Kodish, 604 F.3d at 508 n. 13). Kodish, id. at 508 also reconfirmed the Seventh Circuit's mixed signals on the

3

> subject that had earlier been remarked in Long. What the Solicitor General and various of the Seventh Circuit cases treat as the correct standard was certainly satisfied by Lopez's role here.
>
> That of course makes for a critical--indeed controlling--difference in the analytical approach to, and hence the outcome on, the current motion. It is obvious from what has gone before and what still remains of this factual presentation that Fidelity's counsel have primarily trained their analytical sights on its personnel higher in the food chain than Lopez, seeking to portray them as having reached an independent decision to fire Lockard and correspondingly downplaying Lopez's role. But all of that changes when the far more demanding showing by Lockard that Lopez played the "singular" role in the termination decision is rejected in favor of the need to show that Lopez's influence on that decision was at least "significant."

If Notaria is to be believed (as she must be for present purposes), there are surely genuine issues of material fact that preclude any grant of summary judgment. Hence the current motion for that relief is denied, and the previously scheduled July 21 status hearing will be devoted primarily to discussion of the steps and timetable required to bring the case to trial.

On added point. Counsel for the parties should also be prepared to discuss during that hearing (at least briefly) the possible consequences of the now-aborted Rule 56 motion. If Notaria's version of events has already been known to defense counsel as the result of discovery in the case, there would seem to be a serious question whether defendants' summary judgment motion should have been filed at all. If Notaria were ultimately

4

to prevail at trial, the usual award of attorneys' fees to a prevailing plaintiff in such cases might take care of the added cost that has been incurred in responding to the groundless Rule 56 motion. If however defendants were to win at trial, consideration might have to be given to a possible award to Notaria for having been needlessly required to jump through the hoops prescribed by LR 56.1.

                                                    _____
                                                    Milton I. Shadur
                                                    Senior United States District Judge

Date: July 14, 2010